UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, | ) |
| Plaintiff, | ) No. 08-3760 BZ |
| v. | ) **ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| TOWN OF HILLSBOROUGH, | ) |
| Defendant. | ) |

This action arises out of alleged violations of the Clean Water Act ("CWA"), 33 U.S.C §§ 1251 *et seq.*, by the Town of Hillsborough ("Hillsborough") in permitting unauthorized discharges of sewage from its municipal separate storm sewer system into the San Francisco Bay.[1]  Hillsborough moves to dismiss this action for lack of subject matter jurisdiction on the ground that plaintiff's notice letter fails to meet the notice requirements for a "citizen suit" under section 505(b) of the CWA, 33 U.S.C § 1365(b).  Hillsborough contends the

---

[1] All parties have consented to my jurisdiction, for all proceedings including entry of final judgment, pursuant to 28 U.S.C. § 636(c).

1

letter fails to specify the dates or locations of the alleged violations and that CWA's implementing regulation, 40 C.F.R. § 135.3(a) requires that the letter do so.[2]  In response, plaintiff argues that the notice letter it filed complies with the implementing regulation because it refers Hillsborough to the violations that it had self-reported, thereby providing Hillsborough with enough information to permit it to identify the dates and locations of the alleged CWA violations.  Having considered all of the papers filed by the parties, and good cause appearing, the motion to dismiss is **DENIED**.

The CWA allows "citizen suits" against alleged violators of the Act, as long as the plaintiff has provided specific notice to the suspected polluter, the Environmental Protection Agency ("EPA"), and state regulatory agencies at least 60 days before filing suit in federal court.[3]  33 U.S.C. § 1365(b). Under the EPA's regulations[4], notice under the CWA must include: " . . . sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for

---

[2]   Compliance with this notice provision is required for jurisdiction.  See Natural Res. Def. Council v. Southwest Marine, Inc., 236 F.3d 985, 995 (9th Cir. 2000).

[3]   The purposes of the 60-day notice requirement are to provide an alleged violator with the opportunity to negotiate a resolution to the dispute and to give state and federal agencies an opportunity to enforce their laws and regulations. See Wash. Trout v. McCain Foods, Inc., 45 F.3d 1351, 1354 (9th Cir. 1995).

[4]   The CWA authorizes the EPA Administrator to prescribe the manner of the notice. 33 U.S.C. § 1365(b)(1)(A).

the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a).

The Ninth Circuit has concluded that "[t]he key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy, 305 F.3d 943, 951 (9th Cir. 2002). Accordingly, notice is held to be sufficient if it is "reasonably specific" and if it gives "the accused company the opportunity to correct the problem." San Francisco BayKeeper v. Tosco Corp., 309 F.3d 1153, 1158 (9th Cir. 2002) (quoting Atl. States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 820 (7th Cir. 1997)). Although the CWA's notice requirement is "strictly construed," Natural Res. Def. Council v. Southwest Marine, Inc., 236 F.3d 985, 998 (9th Cir. 2000), plaintiffs are not required to "list every specific aspect or detail of every alleged violation." Bosma Dairy, 305 F.3d at 951 (quoting Pub. Interest Research Group v. Hercules, Inc., 50 F.3d 1239, 1248 (3d Cir. 1995)).

On June 5, 2008, plaintiff sent notice to Hillsborough of its intention to bring suit against it for 96 alleged violations of section 301, 33 U.S.C. § 1311, of the CWA. Eighty-five (85) of the alleged violations, plaintiff stated, were due to sanitary sewage overflows ("SSOs"), and eleven (11) of the alleged violations were due to overflows that entered Hillsborough's municipal separate storm sewer system

3

(MS4) in violation of Hillsborough's National Pollution Discharge Elimination System Permit No. CAS0029921. The letter states in part:

> Information available to [plaintiff] including Hillsborough's sewer service request forms and spill reports submitted electronically to the Regional Board, and spill reports submitted to the Office of Emergency Services ("OES") indicate that in 2005, Hillsborough had 13 SSOs from its collection system . . . . In 2006, Hillsborough had 18 SSOs from its collection system . . . . In 2007, Hillsborough had 37 SSOs from its collection system . . . . Thus far in 2008, Hillsborough has had 17 SSOs from its collection system through March 2008 . . . . Information currently available to [plaintiff] indicates that since 2005 Hillsborough has spilled SSOs from its collection system on at least 85 separate occasions totaling at least 85 separate CWA violations . . . . As the monthly tables, the sewer service request forms, and reports to OES indicate, Hillsborough has discharged approximately 11 SSOs to storm drains and the Receiving Waters during the past five years.... Hillsborough's MS4 Permit prohibits the discharge of non-storm water (material other than storm water) into Hillsborough MS4. MS4 Permit, Discharge Prohibitions A.1. SSOs that enter Hillsborough's MS4 are not storm water but rather raw, or inadequately treated sewage. Hillsborough violates the MS4 Permit everytime an SSO from the Hillsborough collection system enters Hillsborough's MS4.... Hillsborough has reported such illegal discharges of non-storm water to the Hillsborough MS4 on at least 11 separate occasions over the past five years.

(Decl. of Martha Debry, Exh. A.)  Hillsborough contends that this letter is insufficient because it fails to specify the locations, dates, and quantities of its alleged violations as required by the implementing regulation.[5]  Hillsborough further argues that plaintiff's notice letter is comprised of

---

[5]   Contrary to Hillsborough's argument, the implementing regulation does not require a plaintiff to provide notice of the quantities of the discharges.  40 C.F.R. § 135.3(a).  Nor has Hillsborough provided any case law in support of its argument. *See* Pinoleville Pomo Nation v. Ukiah Auto Dismantlers, No. C07-02648, 2007 U.S. Dist. LEXIS 91073, at *14, 2007 WL 4259404, at *5 (N.D. Cal. Dec. 3, 2007).

4

"boilerplate" language that merely contains "general allegations" that Hillsborough illegally discharged effluents over a period of five years, and argues that plaintiff's failure to provide it with specific dates and locations of the alleged discharges prohibited it from remedying the violations, thereby prejudicing it and defeating the ameliorative purpose of the CWA's notice provision.[6]

Hillsborough's arguments are unconvincing.  First, I agree with United Anglers v. Kaiser Sand and Gravel Co., No. C95-2066, 1995 U.S. Dist. LEXIS 22449, at *5 (N.D. Cal. Sept. 27, 1995), that "[u]nder the literal language of the EPA's implementing regulations, the specific locations and dates of violations need not be included in the notice letter; what is required is 'sufficient information to permit the recipient to identify' the locations and dates."  Accordingly, I agree with other courts that have held that a reasonably specific indication of the area and time-frame of the violations is sufficient to satisfy the EPA's implementing regulation's requirements.  Id. (citing California Public Interest Research Group v. Shell Oil Co., No. C92-4023, 1994 U.S. Dist. LEXIS 18999, at *4 (N.D. Cal. Jan. 5, 1994)).

While it is true that a plaintiff "cannot simply allege that violations occurred within a broad period of time with no additional information", this is not what plaintiff has done in the instant case.  Friends of Frederick Seig Grove #94 v.

---

[6] The fact that plaintiff has filed different, more detailed notice letters in other cases is not relevant to whether this one is adequate.

5

Sonoma County Water Agency, 124 F.Supp.2d 1161, 1168 (N.D. Cal. 2000) (citing California Sportfishing Protection Alliance v. City of W. Sacramento, 905 F. Supp. 792, 800 (E.D. Cal. 1995) (notice that "[f]or the previous five years on hundreds of occasions you have violated your NPDES permit" held insufficient)).

Here, plaintiff stated that the violations it identified were based on Hillsborough's own reporting submissions to three regulatory agencies including the California Regional Water Quality Control Board ("State Board"), the San Francisco Regional Water Quality Control Board ("Regional Board"), and the Office of Emergency Services ("OES").  Hillsborough therefore had "enough information to determine the precise dates of the alleged violations; indeed, they possessed the very information they now claim to lack."  Friends of Frederick Seig Grove, 124 F.Supp.2d at 1169 *accord* Northern California RiverWatch v. Lake County Sanitation Dist., No. C03-4552, 2004 WL 3154580 (N.D. Cal. September 02, 2004).

Plaintiff's notice did not simply allege a range of dates; it referred to Hillsborough's self-monitoring data for all 96 of the alleged violations.[7]  *See* Friends of Frederick

---

[7]  The 11 MS4 Permit violations present a closer question.  Plaintiff acknowledged during argument that information about these 11 alleged violations is contained within the reports Hillsborough filed for the other 85 alleged violations.  I am still not persuaded, however, that Hillsborough cannot identify the time and location of these events given that it filed the reports utilized by plaintiff to allege the 85 SSO violations.  Additionally, plaintiff stated during the hearing that it based the alleged SSO violations off of what are commonly known as "call out reports", which were given to plaintiff by Hillsborough.

6

1   Seig Grove, 124 F.Supp.2d at 1169 (stating that "plaintiff
2   should not be forced to list specific dates for all 326
3   violations identified in the notice" where the violations it
4   identified were "based on the defendants' submissions to the
5   Regional Board"); *see also* United Anglers 1995 U.S. Dist.
6   LEXIS 22449, at *5 (noting that because specific locations and
7   general time frames of the alleged violations could be easily
8   identified by reference to self-monitoring reports prepared by
9   the defendant, the notice letter was sufficient).

10       Hillsborough has not satisfactorily explained in its
11  papers or at argument why it could not identify the dates and
12  locations of the alleged violations from the self-monitoring
13  data.[8]  In fact, Hillsborough admits that it "has reported
14  overflows from its sanitary sewer collection system to the
15  regulatory agencies" and that it has done so from 2005 through
16  2008.  (Def.'s Reply to Opp. p.3.)  Hillsborough argues,
17  however, that the number of violations alleged by plaintiff do
18  not correspond to the number of SSOs recorded by the State and
19  Regional Water Boards.[9]  Hillsborough's failure to submit its

---

[8]     During argument, Hillsborough seemed to equate the information required in the Notice Letter with the information it needs to defend the suit.  For example, it argued that some of the 71 SSO events reported by the State and Regional Boards were too small to constitute violations of the CWA.  It also argues that if more information had been provided about some small spills, it would have been evident that spilled water would not reach the Bay and result in a violation.  The EPA regulations do not require this level of detail and defendant has cited no authority for its argument.

[9]     During argument, Hillsborough argued that the 70 SSO "events" compiled by the State and Regional Water Boards do not "jive" with the 85 SSO discharge violations alleged by plaintiff (based on the difference in the number of reported SSO discharges).  Hillsborough failed to explain why it could

7

self-monitoring reports for evaluation is inexplicable, as those reports should demonstrate whether they would permit it to identify the dates and locations of the alleged violations. As the Ninth Circuit noted in <u>Tosco</u>, defendant is in the best position to know the contents of its self-prepared reports. (*See also* <u>N. Cal. River Watch v. Redwood Landfill Inc.</u>, No. C07-05058, 2007 U.S. Dist. LEXIS 95504, at *16 (N.D. Cal. Dec. 21, 2007) (defendant's effort to distinguish <u>Tosco</u> because <u>Tosco</u> "had more background knowledge in addition to the notice letter" rejected because "[m]onitoring reports can still provide enough background information to make the notice sufficiently specific.")). With the help of the reports, Hillsborough should be able to locate where discharges of raw sewage and discharges from the collection system to Hillsborough's municipal separate storm sewer system have occurred.[10]

---

not simply look at *its own reports* rather than the tables compiled by the State and Regional Boards to locate the dates and locations of the 85 alleged violations. Presumably, if Hillsborough were to refer to its own reports, such as the reports it is mandated to submit not only to the Water Boards but also to OES, it would find the "missing" 15 alleged violations.

[10] While plaintiff also failed to provide the reports, plaintiff has provided other information that demonstrates that the locations and dates of the alleged violations could have been identified had Hillsborough reviewed the self-monitoring reports that it was required to submit to the Regional Board, State Board, and OES. For example, the State Water Resources Control Board Order No. 2006-0003-DWQ provided by plaintiff states that "[i]nformation regarding SSOs must be provided to Regional Water Boards and other regulatory agencies in a timely manner . . . ." and outlines the mandatory information to be included in SSO online reporting, such as the location of the SSO and the time of the SSO notification or discovery. (Decl. of Sejal Choski Exh. B pp.3, 23-24.) Hillsborough's presumed compliance with this order indicates that it engaged in self-reporting, which included recording the dates and locations of

1  Accordingly, I find that the notice letter sent by
2  plaintiff to Hillsborough provided it with sufficient
3  information to identify the locations and dates of the alleged
4  violations.[11]  Hillsborough's motion to dismiss is therefore
5  **DENIED**.  Hillsborough shall answer the complaint by December
6  22, 2008.

Dated:   December 5, 2008

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\SAN FRANCISCO BAYKEEPER\ORDER ON D'S 12(B)(1) MOTION TO DISMISS v2.FINAL RULING.wpd

---

SSO violations.  At Hillsborough's request, I take judicial notice of the Regional Board's Tentative Cease and Desist Order (see Wilbur v. Locke, 423 F.3d 1101, 1103 (9th Cir. 2005)), which details the exact dates and locations of 70 alleged SSO violations reported by Hillsborough from 2005 through July 2008.  This information alone seems to undermine Hillsborough's argument.

[11]  In its reply, Hillsborough expresses concern that plaintiffs will seek to include unreported violations in this lawsuit as well as "continuing" violations that are due to its alleged overall failure to maintain its sewer and drain systems.  I will address that issue if and when it occurs.